# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILMA THOMPSON, | Case No. 2:12-cv-01906-APG-VCF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| ERIC HOLDER, in his official capacity as Attorney General of the U.S. Department of Justice; UNITED STATES MARSHALS SERVICE, | (Dkt. No. 19) |
| Defendants. | |

## I.     BACKGROUND

Plaintiff Wilma Thompson ("Thompson") is an African-American woman, and at all relevant times was an employee of the United States Marshals Service ("USMS") in Las Vegas, Nevada. The USMS is an agency within the United States Department of Justice ("DOJ"). In December 2008, Thompson acquired the position of "criminal program specialist" at pay grade GS-09. In December 2010, she applied for the position of "management and program analyst" ("MPA"), a GS-11 position. This new position would have involved a promotion, a pay increase, and, in Thompson's words, a "major career move upward." (Compl. ¶ 10.) Thompson asserts that she was the best-qualified applicant for the position, and that the outgoing MPA who she would have replaced said as much. (*Id.* ¶ 11.)

Thompson alleges that Elizabeth Norman ("Norman"), a Caucasian co-worker at the USMS, was selected in January 2011 for the MPA position despite Norman's inferior qualifications. Thompson requested an explanation from the USMS. Chief Decker and Assistant

Chief Javier Jimenez allegedly told Thompson that Norman was selected because she "would make a better fit to work with management." (*Id.* ¶ 13.) They would not elaborate any further on the decision-making process, but they told Thompson that because of budget cuts more promotions were unlikely in the near future. Finally, Thompson alleges that Norman now seeks Thompson's assistance to help Norman learn how to do her new job, evidencing Norman's alleged inability to perform as an MPA.

On April 18, 2011, Thompson filed an administrative complaint, requesting a hearing before the Equal Employment Opportunity Commission ("EEOC"). On March 6, 2012, she withdrew her request for a hearing, and the EEOC Administrative Judge returned the case to the DOJ. The DOJ's Complaint Adjudication Office received the case on March 15, 2012. *See* 29 C.F.R. § 1614.108(a) ("The investigation of complaints shall be conducted by the agency against which the complaint has been filed.").[1]

On June 8, 2012, the CAO rejected Thompson's claim. (Dkt. No. 1 at 8–21.) The CAO informed her of her right to an administrative appeal and to file suit in federal court. The letter states: "[Y]ou have the right to file a civil action in the appropriate United States District Court within 90 days of the date you receive this decision." (*Id.* at 8.) Although the body of the document clearly indicates that the CAO determined that no race discrimination occurred, the letter's last paragraph erroneously states: "[f]or the foregoing reasons, the record does support complainant's allegation . . . ." (*Id.* at 21.)

On August 8, 2012 the CAO sent a corrected copy of the June 8 "decision" letter. The last paragraph was corrected: "[f]or the foregoing reasons, the record does *not* support complainant's allegation . . . ." (Dkt. No. 20-4 at 4 (emphasis added).)[2] Even though the August 8 letter states that the correction "does not affect your appellate rights in this case," the letter includes the boilerplate paragraphs explaining Thompson's right to appeal and her right to file suit in district

---

[1] Code of Federal Regulations, Title 29, Subtitle B, Chapter XIV, Part 1614 provides the regulations applicable to federal employees making discrimination claims against the federal government and its agencies.

[2] Defendants do not dispute the existence or authenticity of the August 8, 2012 letter, and thus the Court properly considers it to resolve this motion.

court. (*Id.* at 1–2. "[Y]ou have the right to file a civil action in the appropriate United States District Court within 90 days of the date you receive *this decision*." (emphasis added).)

On November 7, 2012, Thompson filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e –2000e-17. She named as defendants U.S. Attorney General Eric Holder ("Holder") in his official capacity, and the USMS (collectively, "Defendants"). Thompson claims that Defendants took adverse employment action against her on account of her race. Thompson represented herself pro se until January 3, 2013, when the Court approved attorney William W. Bloch's petition to practice pro hac vice and to designate attorney Richard Segerblom as local counsel. (Dkt. No. 12.)

Pending before the Court is Defendants' motion to dismiss. (Dkt. No. 19.) They argue that (i) Thompson's suit was untimely filed more than 90 days after the DOJ's Complaint Adjudication Office rejected her claim and issued a right-to-sue letter, and therefore the Court lacks subject matter jurisdiction; and (ii) if the case proceeds, Holder is the only proper defendant and the USMS should be dismissed. (Dkt. No. 19.)

## II. ANALYSIS

### A. Administrative Exhaustion: Equitable Tolling

To establish federal subject matter jurisdiction over a Title VII employment discrimination claim, a plaintiff must first exhaust his or her administrative remedies. *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002). In relevant part, 29 C.F.R. § 1614.407 provides:

> A complainant who has filed an individual complaint . . . is authorized under title VII . . . to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed[.]

Although filing an administrative charge is a jurisdictional requirement, "[f]iling a *timely* charge of discrimination with the [agency] is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 386 (1982) (emphasis added).

Plaintiffs have the burden of proof to invoke equitable tolling. *U.S. v. Marolf*, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999); *Green v. Executive Coach & Carriage*, 895 F. Supp. 2d 1026, 1031 (D. Nev. 2012). "Equitable tolling is generally applied in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (internal quotation marks and citation omitted). In addition, "[t]he doctrine of equitable tolling has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period. . . . [The doctrine] focuses on whether there was excusable delay by the plaintiff[.]" *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002); *see also Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights.").

More specifically,

> [L]ong-settled equitable-tolling principles instruct that generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. . . . As to the first element, the standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances. . . . With regard to the second showing, a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. . . . Instead, a litigant must show that extraordinary circumstances were the cause of his untimeliness and . . . made it impossible to file the document on time.

*Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (internal quotation marks and citations omitted).

The first question is which of the CAO's communications constituted its "final action" on Thompson's administrative complaint, as the 90-day period began to run upon Thompson's receipt of the CAO's "final action." 29 C.F.R. § 1614.407(a). If the August 8 letter were the Agency's final action, then Thompson's complaint in this Court was timely filed within 90 days of August 9, the date she received the letter. The Court notes that the regulation does not state

"final decision," which clearly occurred on June 8 even though a typo was corrected on August 8. The choice of "action" instead of "decision" indicates that some event following the decision itself could trigger or "reset" the 90-day period. However, the Court need not determine the precise contours of the term "final action" in this context because equitable tolling is warranted.

The June 8 letter clearly communicated the 90-day limitation to Thompson. But the August 8 letter, which arrived about 30 days before the original 90-day period expired, stated that the 90-day period started upon Thompson's receipt of "this decision." Thompson could have reasonably understood that "this decision" referred to the August 8 letter itself and not to the substantive decision made on June 8. Also, while the August 8 letter states that the typo correction did not affect Thompson's appeal rights, it says nothing about how the correction may affect her rights to sue in federal court. Her appeal rights relate to an administrative appeal, not to a lawsuit in this Court. Although there is no indication of purposeful inducement or trickery by Defendants, their confusing communications tip the scales of equity in Thompson's favor. Under the circumstances, she expended the efforts that a reasonable person would be expected to deliver. *See Kwai Fun Wong*, 732 F.3d at 1052.

Although no external factors rendered it physically impossible for Thompson to file suit within 90 days of receiving the June 8 letter, these circumstances were extraordinary. She received two letters, two months apart, both stating she had 90 days from their receipt to file suit. In light of these letters, Thompson's delay, during a period when she was *not* represented by local counsel, is excusable. *See Johnson*, 314 F.3d at 409. To the extent Thompson committed a simple miscalculation, it is apparently because the CAO gave her conflicting start dates for the calculation. *See Kwai Fun Wong*, 732 F.3d at 1052.

Thompson has sufficiently demonstrated that the application of equitable tolling is fair and just in this situation. Her filing in this Court was timely.

### B. Proper Defendant

Defendants correctly point out that in a Title VII action by an employee of the federal government, the proper defendant is "the head of the department, agency, or unit, as appropriate."

42 U.S.C. § 2000e-16(c). As such, an agency itself cannot be a defendant. *See id.* The claim against the USMS is therefore dismissed. Holder is a proper defendant as the "head" of the DOJ.

### III. CONCLUSION

In accord with the above, the Court hereby ORDERS:

1. The Complaint in this Court was timely filed, as equitable tolling extended the 90-day limitations period under 29 C.F.R. § 1614.407(a).
2. The United States Marshals Service is dismissed with prejudice.

DATED this 11th day of February, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE